IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Donald Herrington,<br>        Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | **1:16-cv-412 (AJT/MSN)** |
| | ) | |
| Harold Clarke,<br>        Respondent. | ) | |
| | ) | |

MEMORANDUM OPINION

Virginia state prisoner Donald Herrington initiated this action by filing a petition for writ of habeas corpus challenging several convictions entered against him in the Circuit Court of Stafford County. See Dkt. No. 1. Currently pending is respondent's motion to dismiss the petition. See Dkt. No. 62. For the reasons explained below, the motion to dismiss must be granted, and the petition must be dismissed.

**I. Background**

This case, initiated in April 2016, is before this Court having been remanded by the United States Court of Appeals for the Fourth Circuit. See Dkt. No. 1; Appeal No. 17-6252. Its origins trace to 2011, when petitioner was charged with three counts of obtaining money by false pretenses, five counts of perjury, one count of possession of a Schedule I Controlled Substance, one count of possession of a Schedule II Controlled Substance, three counts of filing false or fraudulent income tax returns, and two counts of failure to file an income tax return. See Dkt. No. 1-3, p. 7. Petitioner represented himself during a three-day jury trial which occurred in July and August of 2012 and was presided over by Judge Sarah L. Deneke of the Stafford Circuit

Court. See Case Nos. CR11001320-00 through -14 (hereinafter "Tr. Ct. Rec."). The jury found petitioner guilty on all but the possession charges.[1]

Thereafter, petitioner requested and was appointed an attorney for post-trial motions and his direct appeal. Id. Attorney Shama Farooq of the Office of the Public Defender then filed two post-trial motions on petitioner's behalf, each of which was denied. Id. On direct appeal, petitioner was represented by Alexander Raymond, another public defender. See Record No. 1945-12-4. Finding a dearth of meritorious issues in the trial record, Raymond filed an Anders brief with the Court of Appeals of Virginia. Id. Petitioner filed alongside the brief a handwritten "pro se supplement" consisting of 134 alleged errors infecting his trial. Id. The Court of Appeals experienced significant difficulty understanding petitioner's supplement, noting that "deciphering [the document] require[d] reference to a system of abbreviations of appellant's own creation" and that the supplement failed to cite to specific locations to flag issues in the trial record. Id. The court thus deemed many of petitioner's arguments waived and denied petitioner's appeal. Id. On September 2, 2014, the Supreme Court of Virginia followed suit and denied petitioner's subsequent appeal. Record No. 140286.

Petitioner sought and was denied state habeas relief and, on April 12, 2016, filed the instant petition. See id.; Dkt. No. 1. Deeming petitioner's claims procedurally barred and otherwise meritless, this Court denied all sixteen of petitioner's grounds and dismissed the petition on February 10, 2017. See Dkt. Nos. 24-25. In response to petitioner's appeal, the Fourth Circuit granted a certificate of appealability with respect to two claims: (1) petitioner's claim that his waiver of his right to trial counsel was not knowing, voluntary, and intelligent and

---

[1] Additionally noted is the fact that the jury found petitioner guilty not of obtaining money by false pretenses, but of *attempting* to obtain money by false pretenses, a lesser-included charge. See Tr. Ct. Rec.

(2) petitioner's claim that he was afforded ineffective assistance of appellate counsel. Appeal No. 17-6252. The Fourth Circuit then remanded these claims "for further consideration by the district court on the merits," instructing this Court to consider petitioner's remaining claims upon receipt of "any necessary state court transcripts." Id.

## II. Standard of Review

To obtain federal habeas relief, a state prisoner must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits a federal court's authority to grant habeas relief. Pursuant to AEDPA, when a state court has addressed the merits of a claim raised in a subsequent federal habeas corpus petition, the reviewing federal court may not grant the petition on that particular claim unless the state court's adjudication was (1) contrary to or an unreasonable application of clearly established federal law or (2) was based on an unreasonable determination of the facts presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2). Where a state court's adjudication is not rendered "on the merits," then, its decision is not entitled to the deferential review standard set out in § 2254(d). In light of the procedural history just described, this Court, with very limited exceptions, is constrained to provide merits review to petitioner's remaining claims.

## III. Analysis

As already stated, the Fourth Circuit remanded this case for a narrow purpose: to consider petitioner's claims that (1) his waiver of his right to counsel was not knowing, voluntary, and intelligent, and that (2) he was afforded ineffective assistance of appellate counsel. See Appeal No. 17-6252. Despite the clear boundaries set by the Court of Appeals, adjudication of the instant petition presented significant challenges; petitioner's filings lack meaningful

organization, make arguments in a scattershot manner, and unnecessarily utilize abbreviations and unwieldy webs of cross-references to briefs and other court filings. Additionally, despite the fact that some of petitioner's arguments are, at first blush, compelling, a review of the trial record reveals that those arguments rest on frequent and sometimes flagrant mischaracterizations of the trial record. As explained in more depth below, it is clear that petitioner's claims lack merit. Respondent's renewed motion to dismiss must therefore be granted.

### A.   *Waiver of Right to Counsel*

Petitioner asserts that his waiver of his right to trial counsel was invalid in that it was not knowing, voluntary, or intelligently made. See Dkt. No. 1, p. 12. This Court previously found that this claim was procedurally barred due to the Supreme Court of Virginia's invocation of Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), in denying it at state habeas. See Dkt. No. 24. The Fourth Circuit, though, found that petitioner's waiver claim was jurisdictional and that it was debatable that Slayton constituted an "adequate" state ground on which to find the claim barred. See Record No. 17-6252. It accordingly remanded the claim "for further consideration … on the merits." Id. In light of this clear mandate, this Court declines to address respondent's assertions that Slayton was, in actuality, an "adequate" basis on which to find a procedural bar and proceeds to consider petitioner's waiver of counsel claim on its merits.

The Sixth Amendment guarantees to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process. United States v. Wade, 388 U.S. 218, 224 (1967). By the same token, though, "courts must take care not to force counsel upon a defendant, because in addition to the right to the assistance of counsel, the Sixth Amendment implicitly provides an affirmative right to self-representation." United States v. Singleton, 107 F.3d 1091, 1095-96 (4th Cir. 1997). It thus follows that a criminal defendant is entitled to waive

4

his right to counsel.  Such a waiver, however, must be knowing, voluntary, and intelligent.
Montejo v. Louisiana, 556 U.S. 778, 786 (2009).

Indeed, where a defendant chooses to waive his right to counsel and represent himself,
"he should be made aware of the dangers and disadvantages of self-representation, so that the
record will establish that he knows what he is doing and his choice is made with eyes open."
Faretta v. California, 422 U.S. 806, 835 (1975).  But a trial court's failure to advise a defendant
of *all* of the dangers and disadvantages of self-representation does not automatically render a
subsequent waiver unconstitutional.  United States v. Gallop, 838 F.2d 105, 110 (4th Cir. 1988).
Nor is a judge required to conduct a "searching or formal inquiry" to secure a valid waiver.
United States v. Ductan, 800 F.3d 642, 649 (4th Cir. 2015).  In fact, "federal law does not require
that the court engage in [any] specific dialogue with a defendant."  See Davis v. Padula, No.
5:11-2256-TMC-KDW, 2012 WL 2974689, at *7 (D.S.C. June 21, 2012) (citing Gallop, 838
F.2d at 110).  Instead of engaging in "a formalistic, deliberate, and searching inquiry," judges are
"merely required to determine the sufficiency of the waiver from the record as whole."  Gallop,
838 F.2d at 110.  In reviewing court records to determine an accused's understanding of the
implications of his waiver of counsel, the Fourth Circuit has looked to "the educational
background, age and general capabilities of an accused[.]"  Davis, 2012 WL 2974689, at *7.

A review of the trial court transcripts makes clear that petitioner's waiver was knowing,
intelligent, and voluntary.  Petitioner was on more than one occasion warned of the possible
criminal penalties he faced as well as the dangers and disadvantages of self-representation.  He
nevertheless repeatedly insisted on proceeding pro se.  The pretrial and trial transcripts are
excerpted below chronologically, and in relevant part.

> THE COURT: Mr. Herrington, you're here because I show a number of indictments returned
> from the grand jury on December 5th. It looks like fifteen indictments. I show an indictment

for obtaining money by false pretenses, three counts of that. Three counts of perjury, four counts of perjury, five counts of perjury . . . . A charge of filing a false or fraudulent income tax return. It looks like there are three felony counts and one – two misdemeanor counts on filing a false return.

...

THE COURT: All right. Well, let's talk about the offenses themselves, Mr. Herrington, because the obtaining money by false pretense charges are felony offenses that carry the potential of up to twenty years in prison. The perjury charges carry up to ten years in prison, And you, of course, have a number of charges, each of which are serious charges carrying a significant potential penitentiary or jail sentence. And you're telling me that you want to proceed without an attorney?

Transc. Dec. 20, 2011, pp. 2-5.

THE COURT: All right. Well, let's talk about it because, Mr. Herrington, you have a number of felony charges. I show one, two, three charges that have a twenty-year maximum; I show one, two, three, four, five, six, seven charges that have a ten-year penitentiary maximum; I show one, two, three charges that have a five-year penitentiary maximum; and then I have two misdemeanor charges each of which carry a potential of twelve months in jail.

...

THE COURT: ... Now, do you understand that if you want to represent yourself on these charges that the same rules would apply to you as would apply to an attorney?

DEFENDANT: Yes.

THE COURT: Do you have any training in the rules of evidence?

DEFENDANT: No.

THE COURT: Do you have any training in the law?

DEFENDANT: No.

THE COURT: What's the last grade in school that you completed, Mr. Herrington?

DEFENDANT: I had twelfth.

THE COURT: All right. Do you think that you are qualified to represent yourself in these cases?

DEFENDANT: Probably not to the fullest extent, but I'm gonna give it my best shot.

...

THE COURT: (interjecting) It's a big risk, Mr. Herrington.

DEFENDANT: It's very kind of you. It is very kind of you to give me time –

THE COURT: (interjecting) It's a big risk. And what need to [sic] make sure of is that you understand the consequences.

DEFENDANT: I do, fully.

Transc. Feb. 3, 2012, pp. 5-10.

THE COURT: ... So let's go over the charges first of all, Mr. Herrington, because you have charges of obtaining money by false pretenses – that's a felony charge – two, three – three charges of obtaining money by false pretenses. You have a charge of perjury – there are three charges – four charges of perjury – five charges of perjury . . . . There are then felony charges of filing a fraudulent or false income tax return, and there are five counts of that. So you have a number of felony charges – it looks like fifteen felony charges – each of which carry the potential of a penitentiary sentence if you're convicted. Do you understand that?

DEFENDANT: Fully.

...

THE COURT: ... So you're aware of the sentence range for each of these charges, Mr. Herrington?

DEFENDANT: I am, Your Honor.

THE COURT: And – and you're aware that – of course, you have an absolute right to represent yourself, but if you choose to represent yourself, do you understand that you will be held to the same rules and the same standards as if you had counsel; do you understand that?

DEFENDANT: Yes.

THE COURT: And so, Mr. Herrington, you were indicted in December.

DEFENDANT: I know.

THE COURT: This case had an initial court hearing, it looks like, in February, and the Court has continued it for you to hire an attorney. Do you intend to hire an attorney?

DEFENDANT: I have talked to attorneys, and like I said, it's – the attorneys that I've talked to just – no one really wants to take this case. It's too document heavy, and I haven't found

counsel that's really willing to take this case. It's turning into a problem for me. I am prepared to represent myself and all the consequences that go with it.

THE COURT: Well, the issue really, Mr. Herrington, isn't whether you're prepared. It's whether that's what you are asking the Court to do, to allow you to waive your right to counsel because you want to represent yourself on these felony charges. Is that what you want to do?

DEFENDANT: Yes, it is.

THE COURT: Or do you want me to keep this case on the docket for March 26th to –

DEFENDANT: (interjecting) I'd like to rep –

THE COURT: -- give you some additional time?

DEFENDANT: I'm sorry. I would like to represent myself, Your Honor. I'm waiving my right.

THE COURT: So you're asking this Court to allow you to waive your right to counsel on thirteen felonies and two misdemeanors; is that correct?

DEFENDANT: That's correct.

THE COURT: All right. And Mr. Herrington, I have a form that I want you to read so I want you to have a seat, and we're going to take a minute to go over this form.

…

THE COURT: All right. So Mr. Herrington, you have had an opportunity to read this form that indicates that you intend to waive or give up your right to an attorney; is that correct?

DEFENDANT: That's correct.

THE COURT: And you understand this form?

DEFENDANT: Yes, I did.

THE COURT: Do you understand that if you give up your right to be represented by an attorney that you will be taking on all of the responsibilities and the role that an attorney would have; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that means you will be responsible for the examination of witnesses; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: Cross-examination of witnesses?

DEFENDANT: Yes, Your Honor.

THE COURT: That you'll be responsible for decisions concerning procedure and the best way to approach or try a case; do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: And do you have any legal training, Mr. Herrington?

DEFENDANT: No, Your Honor.

THE COURT: Do you feel qualified to represent yourself in a court of law on these serious felony charges?

DEFENDANT: No.

THE COURT: Well, then why would you give up your right to an attorney and proceed without an attorney?

DEFENDANT: I just – it seems like there's – it's becoming a conflict with, you know, my right to a speedy trial and finding representation, having the money to represent an attorney, having my house raided, everything of value taken from me so I can't really sell anything to get an attorney because the Commonwealth has it. I can't really get a job because I can't leave the State of Virginia which I belong to a union that's in Maryland. So I've really been restricted in my abilities to get money, raise money, and hire an attorney.

THE COURT: All right.

DEFENDANT: And the case is –

THE COURT: (interjecting) Well, those aren't necessarily related, Mr. Herrington. Let's talk about this because you have an absolute right to be represented by counsel. You also have an absolute right to represent yourself in these proceedings. But if you cannot afford an attorney and you meet the standards of indigency as set by the Supreme Court, an attorney will be appointed to represent you. Now, you haven't asked to be considered for Court-appointed counsel, is that right?

DEFENDANT: I'm not going to meet the standard, Your Honor, with the –

THE COURT: (interjecting) Did you not just tell me you're not working?

9

DEFENDANT: I'm getting unemployment.

THE COURT: So in the last – let's say since the first of this year, January 1st of 2012, Mr. Herrington, what has your income been in the last – since January 1st, 2012?

DEFENDANT: I don't really know. It's – I get three hundred and twenty-five dollars a week in unemployment, and then I have some rental income that I do receive. I don't receive a lot in rental income, but – so that's what all these perjuries are for is that I did not consider that in my last time for obtaining an attorney. All the perjuries are basically for obtaining an attorney.

THE COURT: So these charges are arising out of prior applications that you made?

DEFENDANT: For attorneys, yes, they are.

THE COURT: And that is why you are declining to fill out an application –

DEFENDANT: (interjecting) Absolutely.

THE COURT: – for Court-appointed counsel here?

DEFENDANT: Absolutely.

THE COURT: All right. I understand that. So that leaves us with two options and that is either for you to hire an attorney or for you to go forward and represent yourself. Now, in December – or back in January when we first talked about this, Mr. Herrington, you indicated that while you were prepared to represent yourself, that you wanted some additional time to seek an attorney, to seek counsel.

DEFENDANT: I did not ask for additional time, Your Honor.

THE COURT: Okay. Well, Mr. Herrington, I recall asking you specifically whether you were withdrawing your motion to represent yourself, and you said yes.

DEFENDANT: I did not ask for additional time. I said I was willing to go forward. You asked if I wanted to hire an attorney. I said I would like to hire an attorney. You said I'm going to give you time to do that.

THE COURT: But you have no intention of doing that?

DEFENDANT: I have tried, Your Honor. Don't get me wrong; I have spoken with attorneys. But if I could – these motions that I have selected today could go through, it would change my bond situation, I would be able to obtain employment in either Maryland or D.C. is one of my bond motions. The search on my home, there was no warrant for the search is one of my motions today. I would be able to obtain all the things the Commonwealth stole out of my house, basically. They came to my house without a warrant,

kicked doors down which shows there was no consent, and took items from my home. So if I could do these motions today, I think that would help in my ability to get an attorney.

THE COURT: Do you understand, Mr. Herrington, that if you go forward on these motions, that once – if you obtain counsel, counsel can't refile these motions? If you go forward on your own –

DEFENDANT: Uh-huh.

THE COURT: – I'm only going to hear these motions once; do you understand that?

DEFENDANT: Yes, I do, Your Honor.

THE COURT: And the other thing you need to understand, Mr. Herrington, is that we're not going to do this in a split way. If you are going to be represented by counsel, I'm going to hear motions presented by counsel. If you intend to go forward representing yourself, then if the motions are properly filed and noticed, you can proceed on those motions. But you don't get a second bite at the apple if you decide you haven't done them correctly or presented all the evidence and then want to go hire an attorney for me to hear the same motions. Do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: So you are asking this Court to proceed on motions today. You are waiving your right to be represented by counsel on these motions; is that correct?

DEFENDANT: Yes, Your Honor.

THE COURT: And you understand, Mr. Herrington, that that's a decision that is yours. That if you want to wait to be represented by counsel, you can do that; do you understand that?

DEFENDANT: Yes.

THE COURT: Do you also understand that if these motions are heard by the Court today, they will not be heard again with the assistance or the advice of counsel; do you understand that?

DEFENDANT: I am understanding that.

…

THE COURT: All right. So you – this waiver of your right to be represented by counsel that you've executed today, you understand that waiver?

DEFENDANT: Yes.

11

THE COURT: And that's how you want to proceed?

DEFENDANT: Yes, it is.

THE COURT: All right.  Well, Mr. Herrington, I make a finding that you are aware of your options and your rights with regard to being represented by counsel, that you have made a conscientious decision to proceed without counsel, and I'll accept your waiver of your right to be represented by a lawyer in these cases.  All right.  I'm going to file this form.  I'm going to return a copy of it to you, Mr. Herrington.

PROSECUTOR: Your Honor, before you – before you do that, let me ask you – just for the sake of the record on this case, I would ask if you'd be willing to ask him if he's under the influence of any drugs, alcohol, or medications this morning that impair his judgment or ability to execute this waiver today.

THE COURT: All right.  And we'll get to all that in just a minute.  So Mr. Herrington, you are on bond today.  Do you have any alcohol or drugs in your system today?

DEFENDANT: Just my – just my prescription medication, Your Honor.

THE COURT: And what is that, Mr. Herrington?

DEFENDANT: I'm prescribed Adderall and Oxycodone.

THE COURT: And are those prescriptions you take on a regular basis?

DEFENDANT: Regular, every day.

THE COURT: All right.  When did you last take those prescriptions?

DEFENDANT: This morning.

THE COURT: Do either of those prescriptions affect your ability to understand the proceedings going on here today?

DEFENDANT: No, they do not.

THE COURT: Do they affect your ability to make decisions?

DEFENDANT: No.

THE COURT: All right.  And how long have you been taking those prescriptions?  I mean, days, months, weeks, years?

DEFENDANT: About a year now.

THE COURT: Okay. Is there any difference, Mr. Herrington, in how you feel or are thinking today than there was, say, last week?

DEFENDANT: No.

…

THE COURT: All right. Now, Mr. Herrington, you indicated to me that you did not intend to go forward on all of these motions today, is that correct?

DEFENDANT: I'll go forward with all of them, Your Honor.

THE COURT: So you want this Court, Mr. Herrington, to hear a motion to suppress a search warrant that you intend to present yourself; is that correct?

DEFENDANT: That's right.

THE COURT: And you are giving up the opportunity to consult with an attorney or to have an attorney file that motion on your behalf; is that correct?

DEFENDANT: Yes, Your Honor.

THE COURT: All right. Mr. Herrington, I'm advising you against this; do you understand that? This is not a good way to proceed, but this is how you want to proceed, is that correct?

DEFENDANT: Yes.

…

THE COURT: … All right. Now, Mr. Herrington, we need to proceed to arraignment in this case, and we need to set a trial date so that we can proceed. You are no longer asking for time to hire an attorney, correct?

DEFENDANT: That's correct.

THE COURT: … All right, Mr. Herrington, you're here for an arraignment. I'm going to advise you of the charge or charges against you and your constitutional rights as a defendant, and those rights as a defendant remain with you throughout these proceedings. I'm going to ask you to state your plea to these charges, and we're going to set a trial date in just a few minutes. You need to understand and we have had extensive discussions about the fact that you have the right to be represented by an attorney. You have chosen to proceed on these matters without an attorney; is that correct, Mr. Herrington?

DEFENDANT: Uh-huh, that's correct, Your Honor.

THE COURT: And you understand that you have the right to an attorney and that if you can't afford an attorney, one will be provided for you; you understand that right?

DEFENDANT: Yes, Your Honor.

THE COURT:  Yet you have executed today a waiver of your right to be represented by counsel, and you intend to proceed representing yourself on these criminal charges; is that right, Mr. Herrington?

DEFENDANT: Yes, Your Honor.

...

DEFENDANT: I waive the reading of the indictments, Your Honor.

THE COURT: And you've received copies of all fifteen indictments, is that correct?

DEFENDANT: I have, Your Honor.

THE COURT: Are you aware of the range of punishment on each of these charges, Mr. Herrington?

DEFENDANT: I've read them, Your Honor, yes.

Transc. Feb. 21, 2012, pp. 5-74.

THE COURT: All right.  Let me ask you this, Mr. Herrington.  If, in fact, you remain incarcerated through the trial date that's scheduled, are you going to be ready for trial?

DEFENDANT: I'm ready.

THE COURT: Does the fact that you have been arrested on this new charge change your decision to waive your right to an attorney on these charges?

DEFENDANT: No.

THE COURT: You still want to go forward without an attorney?

DEFENDANT: Uh-huh, I do.

THE COURT: Now, clearly, you qualified for court-appointed counsel on the new charge.

DEFENDANT: I did not.

THE COURT: Well, the Judge appointed you an attorney.

DEFENDANT: As a means to an end.

THE COURT: So there must be some reason for that.  So I would have to think that there is at least a chance that you would qualify, or that this Court would appoint counsel if you want it on these charges, but you do not want that?

DEFENDANT: No.

THE COURT: No?

DEFENDANT: No, thank you.  I'm prepared to represent myself.

Transc. June 7, 2012, pp. 16-18.

THE COURT: And, Mr. Herrington, you have charges that include both felony and misdemeanor charges on a number of matters apparently dealing with income taxes, and perjury, and possession.  You have previously waived your right to be represented by counsel, correct?

DEFENDANT: Yes.

THE COURT: And you want to continue with that waiver, Mr. Herrington?

DEFENDANT: Yes.

Transc. July 13, 2012, pp. 3-4.

THE COURT: All right.  Now, Mr. Herrington, as you're aware, we have a trial that starts one week from today.  You have previously waived your right to be represented by counsel in these felony proceedings, and I want to ensure, Mr. Herrington, that you intend to continue with that waiver; is that –

DEFENDANT: (Interjecting) I do.

THE COURT: You fully intend to represent yourself on these felony charges?

DEFENDANT: I do, Your Honor.

Trans. July 23, 2012, p. 62.

THE COURT: Now, you have previously on several occasions, Mr. Herrington, indicated that you intend to proceed without an attorney, and you understand that you do have the right to be represented by an attorney??

DEFENDANT: Yes, I do.

THE COURT: But you want to go forward today representing yourself?

DEFENDANT: I do.

Trans. July 30, 2012, pp. 25-26.

On this broad foundation established over many different court dates, the trial judge's acceptance of petitioner's waiver as knowing, voluntary, and intelligent was eminently reasonable. Judge Deneke of the Stafford Circuit Court furnished petitioner on numerous occasions with information relevant to the charges levied against him, the potential penalties associated with those charges, and the fact that petitioner possessed an absolute right to be represented by an attorney in the criminal proceedings. The trial judge advised plaintiff against waiving his right to counsel and, on several occasions, offered petitioner opportunities to recant that waiver. On each occasion, petitioner rejected the opportunity. The judge elicited that petitioner had completed high school and had several previous experiences as a defendant in the criminal justice system. The judge further witnessed that petitioner had filed a number of motions and requests on his own behalf in the proceedings. District courts within the Fourth Circuit have found waivers of counsel valid under similar circumstances. See, e.g., Grant v. Warden, Broad River Corr. Inst., No. 4:15-cv-2728, 2016 WL 1445206, at *5 (D.S.C. Mar. 11, 2016) (finding waiver valid despite the fact that warning occurred over multiple hearings and where petitioner stated he was "scared out of [his] mind, not knowing nothing about nothing"), report and recommendation adopted at 2016 WL 1427356 (D.S.C. Apr. 11, 2016); Walker v. Eagleton, No. 4:09-214-PMD, 2009 WL 602994, at *2 (D.S.C. Mar. 9, 2009) (finding waiver valid where petitioner had "listen[ed] to the trial judge explain the dangers of self-representation to another defendant" despite failing to address those disadvantages with petitioner directly).

Petitioner raises a host of arguments in support of a contrary finding, but none hold water.

### *Voluntariness of the Waiver*

Petitioner repeatedly asserts that he was "made to chose [sic] between his 6th amendment right to Counsel or 5th Amendment right of not self-incrimination," see, e.g., Dkt. No. 1, p. 12, rendering his eventual waiver involuntary. Petitioner is correct that it is "constitutionally impermissible" to force any criminal defendant "to choose between his Sixth Amendment right to counsel and his Fifth Amendment right against self-incrimination." See, e.g., United States v. Anderson, 567 F.2d 839 (8th Cir. 1977). Because the record of this case makes clear that petitioner was not forced to make such a choice, however, this argument is inapposite.

In support of his constitutional argument, petitioner suggests that he feared filling out the indigency questionnaire required for appointment of counsel because he had been indicted for perjury based on his past responses to such documents. To require him to fill out a similar form in search of representation for the relevant criminal proceedings, he reasons, was to require him to waive his right against self-incrimination. As an initial matter, the veracity of petitioner's professions of fear is rendered questionable by petitioner's outright willingness to file an indigency affidavit in support of obtaining appointed counsel for his direct appeal and post-trial motions. See Transc. Oct. 15, 2012, pp. 11-12. Additionally, petitioner could easily have averted the possibility of later perjury charges simply by being honest and thorough in his responses to the questionnaire.

In any event, the record offers ample evidence to support the notion that petitioner did not require court-appointed counsel for financial reasons in the first instance, rendering his waiver of counsel voluntary irrespective of the question of self-incrimination.

THE COURT: ...Tell me what attorneys you've met with in the last month.

DEFENDANT: One.

THE COURT: And who is that?

DEFENDANT: John Mayoras.

THE COURT: All right. And is it your intention to hire Mr. Mayoras?

DEFENDANT: It is my intention.

Trans. Feb. 3, 2012, p. 8.[2]

THE COURT: ... But if you cannot afford an attorney and you meet the standards of indigency as set by the Supreme Court, an attorney will be appointed to represent you. Now, you haven't asked to be considered for Court-appointed counsel, is that right?

DEFENDANT: I'm not going to meet the standard, Your Honor, with the –

THE COURT: (interjecting) did you not just tell me that you're not working?

DEFENDANT: I'm getting unemployment.

THE COURT: So in the last, -- let's say since the first of this year, January 1st of 2012, Mr. Herrington, what has your income been in the last – since January 1st, 2012?

DEFENDANT: I don't really know.  It's – I get three hundred and twenty-five dollars a week in unemployment, and then I have some rental income that I do receive . . . .

Transc. Feb 21, 2012, pp. 12-13.

In this light, the suggestion that petitioner was required to choose between his right to be represented by counsel and against self-incrimination appears untrue.  By his own admission, petitioner believed he would not qualify for court-appointed counsel and had spoken to and intended to hire private counsel to represent him.  By hiring his own attorney—as the record

---

[2] On the same date, petitioner stated that expected to receive $5,000 in tax returns "real soon" and suggested that the return would take no more than thirty days to be processed.  Transc. Feb. 3, pp.7-9.

suggests petitioner intended and could afford to do—petitioner's rights under both the Fifth and the Sixth Amendments would have been protected.

In this case, the fact that petitioner ultimately did not hire his own counsel cannot lead to an inference that he did not later voluntarily waive his right to be represented. Indeed, the Sixth Amendment right to counsel has "long been construed to include a criminal defendant's qualified right to retain counsel of [his] own choosing," see Newton v. Dretke, 371 F.3d 250, 255 (5th Cir. 2004), but a defendant need only be given "a fair or reasonable opportunity to obtain particular counsel," United States v. Paternostro, 966 F. 2d 907, 912 (5th Cir. 1992). In this case, petitioner was given several months in which to find and hire an attorney but nevertheless failed to do so. And, illustrating the voluntary nature of petitioner's waiver, petitioner executed this even after Judge Deneke indicated a willingness to offer him an additional month in which to hire an attorney.

> THE COURT: Well, the issue really, Mr. Herrington, isn't whether you're prepared. It's whether that's what you're asking this Court to do, to allow you to waive your right to counsel because you want to represent yourself on these felony charges. Is that what you want to do?
>
> DEFENDANT: Yes, it is.
>
> THE COURT: Or do you want me to keep this case on the docket for March 26th to –
>
> DEFENDANT: (interjecting) I'd like to rep –
>
> THE COURT: – give you some additional time?
>
> DEFENDANT: I'm sorry. I would like to represent myself, Your Honor. I'm waiving my right.

Transc. Feb. 21, 2012, p. 8.

Perhaps most illustrative of the voluntariness of petitioner's waiver of counsel is the fact that petitioner flatly rejected Judge Deneke's eventual suggestion that she would consider

appointing him counsel irrespective of his financial circumstances or decision not to answer the indigency questionnaire. Citing petitioner's appointment of counsel in a separate criminal case, Judge Deneke stated, "So I would have to think that there is at least a chance that you would qualify, *or that this Court would appoint counsel if you want it on these charges*, but you do not want that?" to which petitioner responded, "No" and "No, thank you. I'm prepared to represent myself." See Transc. June 7, 2012, pp. 16-18 (emphasis added). This exchange illustrates that petitioner had voluntarily decided to represent himself. The exchange equally obviated any potential constitutional error resulting from petitioner's fear to fill out an indigency affidavit— the trial judge's apparent willingness to appoint petitioner counsel in this case without requiring petitioner to file an indigency affidavit rendered moot any Fifth Amendment concerns.

For all of these reasons, it is clear that petitioner's ultimate waiver of his right to counsel did not arise out of any tension between constitutional rights. Petitioner was not, as he argues, forced to choose between those rights. It is clear, instead, that petitioner's decision was borne not of necessity or duress, but of his own volition.

*Knowledge and Intelligence of Waiver*

Petitioner next asserts that, for a variety of reasons, his waiver of his right to counsel was entered unknowingly and without the requisite level of intelligence. He first takes issue with the trial judge's alleged failure to advise him of the existence of lesser-included offenses and every permutation or possible penalty he could have faced. See, e.g., Dkt. No. 1-2, p. 12 ("The Court has to tell the Defendant of the cause and nature and possible punishment for the offenses."); Dkt. No. 1-2, p. 14 ("The Defendant was never told of the lesser included offenses."); Dkt. No. 50, p. 14 ("DH was never told that his charges could or would be ran consecutive rather than concurrent."). He further blasts the indictments as ineffective to instruct him as to the nature of

20

the claims raised against him, see, e.g., Dkt. No. 50, p. 15, and grieves that Judge Deneke

accepted his waiver of counsel before he was arraigned, see, e.g., id., p. 12.

Petitioner invokes Lord v. United States Government, 412 F.2d 499, 502-03 (4th Cir.

1969), in support of the proposition that the trial judge's failure to advise him as to the lesser-

included offenses relevant to his charges rendered unintelligent petitioner's waiver. See, e.g.,

Dkt. No. 57, p. 2. But Lord stands for no such proposition. It states clearly that, "[t]o be valid

such waiver must be made *with an apprehension* of the nature of the charges, the statutory

offenses included within them, the range of allowable punishments thereunder, . . . ." Lord, 412

F.2d at 502-03 (citing Von Moltke v. Gillies, 332 U.S. 708, 721-24 (1948)) (emphasis added).

Lord, then, does not require a judge be sure a petitioner has concrete and specific knowledge of

every possible lesser-included offense, range of penalties, and penalty structure. Such a reading

of the case would render meaningless the far more recent Fourth Circuit cases which explicitly

hold that no specific or formal inquiry is required of a judge to find valid a criminal defendant's

waiver of his right to counsel. Indeed, to read Lord in the manner petitioner suggests would

require judges to formalistically identify and recite every statute pursuant to which a defendant is

charged, to describe the elements of the charges as well as those of each lesser-included charge,

and to explain the intricacies of the state's sentencing procedures, including every possible

permutation of imposable penalties. Fourth Circuit precedent simply does not require such

specific and searching colloquies. See, e.g., Gallop, 838 F.2d at 110.

Additionally, petitioner's gripes that he lacked sufficient knowledge to represent himself

ring hollow in light of the fact that petitioner waived the reading of the indictments issued

against him and repeatedly stated before trial that he was prepared to represent himself. In any

case, the record is replete with examples of Judge Deneke's dogged, repeated, and specific

21

warnings that petitioner faced over a dozen felony and misdemeanor charges that carried with

them the threat of jailtime.  The judge explicitly stated on the record the maximum penalties

associated with each of the charges petitioner faced.  Furnished with such information, petitioner

apparently seeks to set a standard that a trial judge should not accept a criminal defendant's

waiver of his right to counsel unless the judge is first convinced that the defendant holds the

knowledge and ability of a licensed attorney.  This is simply an untenable standard which would

render unattainable to most criminal defendants a right guaranteed to them by the Constitution.

Petitioner also routinely makes the specious claim that Judge Deneke informed him he

could not have an attorney represent him with respect to a motion he had filed.  See, e.g., Dkt.

No. 1-2, p. 13 ("[T]he Court stat[ed] 3 times that the Petitioner can't have an attorney represent

him.").  Petitioner goes as far as to call Judge Deneke's actions a "deception."  See Dkt. No. 50,

p. 6.  Viewed in context, however, it is clear that petitioner has mischaracterized the words of the

trial judge.  The relevant portion of the trial transcript appears below:

> THE COURT: Do you understand, Mr. Herrington, that if you go forward on these motions,
> that once – if you obtain counsel, counsel can't refile these motions?  If you go forward on
> your own –
>
> DEFENDANT: Uh-huh.
>
> THE COURT: – I'm only going to hear these motions once; do you understand that?
>
> DEFENDANT: Yes, I do, Your Honor.
>
> …
>
> THE COURT: So you are asking this Court to proceed on motions today.  You are waiving
> your right to be represented by counsel on these motions; is that correct?
>
> DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you understand, Mr. Herrington, that that's a decision that is yours.  That
> if you want to wait to be represented by counsel, you can do that; do you understand that?

DEFENDANT: Yes.

THE COURT: Do you also understand that if these motions are heard by the Court today, they will not be heard again with the assistance or the advice of counsel; do you understand that?

DEFENDANT: I am understanding that.

THE COURT: So it's your intention to present motions to the Court today?

DEFENDANT: I might withdraw one motion on hearing those items. I might want an attorney to help me with one of those motions.

THE COURT: Mr. Herrington, you don't get to pick and choose.

DEFENDANT: There are some motions I would like to go forward with.

THE COURT: You do not get to pick and choose.

DEFENDANT: I don't.

THE COURT: You can't have an attorney represent you on one motion but not represent you on the criminal charges. Do you understand if you intend to hire an attorney to represent you on these charges, then you need to hire an attorney? No – no attorney is going to represent you on one motion, Mr. Herrington, because once they've entered an appearance in this case, they are in this case. So they're either representing you or they're not. Do you understand that? You can't go out and find an attorney to represent you on one motion and then represent yourself on other motions.

DEFENDANT: That's not what I was saying, Your Honor.

THE COURT: All right. So you – this waiver of your right to be represented by counsel that you've executed today, you understand that waiver?

DEFENDANT: Yes.

THE COURT: And that's how you want to proceed?

DEFENDANT: Yes, it is.

Transc. Feb. 21, 2012, pp. 15-19.

       In light of the above, it is clear that, despite petitioner's repeated assertions to the

contrary, the trial judge did not deny that plaintiff could be represented by counsel for his

motions.  In context, it is clear that the judge was advising petitioner as to a practical reality that

a private attorney would not likely represent petitioner for one motion exclusively; her words

were not a binding legal statement with respect to petitioner's right to be represented by counsel

before and during trial.

****

In summary, petitioner's arguments that his waiver of his right to counsel was not

knowing, voluntary, or intelligent, voluminous as those arguments are, fall flat.  Judge Deneke's

many admonitions and colloquies, spread over several court appearances, furnished petitioner

with an understanding of the dangers and disadvantages of self-representation, rendering the

waiver knowing and intelligent.  Judge Deneke's repeated insistence that petitioner could be

represented by counsel—and most importantly, her suggestion that petitioner could be appointed

counsel irrespective of his financial circumstances—demonstrate that his waiver was voluntary.

Claim Five is thus denied.

**B.**     **_Ineffective Assistance of Appellate Counsel_**

The second and final issue on remand is petitioner's claim that he was afforded

ineffective assistance by his appellate counsel.  See Dkt. No. 1, p. 28.  In remanding this claim,

the Fourth Circuit highlighted petitioner's argument that counsel was ineffective "for failing to

raise 14 of the claims contained in his state habeas petition" and instead filing an Anders brief.

Case No. 17-6252, p. 4.  Finding that the Supreme Court of Virginia "mistakenly concluded that

Herrington failed to identify" the claims he believes counsel should have raised on direct appeal,

the Fourth Circuit remanded the ineffective assistance question to this Court for an examination

of the "potential merit" of the claims petitioner argues counsel should have raised.  Id. at pp. 5-6.

24

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "strong presumption that counsel's strategy and tactics fall within the wide range of reasonable professional assistance." Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (internal quotations omitted). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. It is, however, not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Instead, "[t]he likelihood of a different result must be substantial." Harrington v. Richter, 562 U.S. 86, 112 (2011). Additionally, in analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Strickland 466 U.S. at 697.

A recitation of petitioner's claims provides a useful roadmap for the assessment of this ineffective assistance claim. It must first be noted, though, that petitioner's prolix and numerous claims defy simple distillation. Petitioner has also failed to present these claims in the context of his ineffective assistance argument; he instead asks the Court to repackage his claims and to review them through the lens of ineffective assistance of appellate counsel. See Dkt. No. 1-2, p. 46 ("I submit all grounds contained herein to be reviewed through this claim of ineffectiveness."). The Court's best attempt to recite the claims follows:

1. Appellate counsel was ineffective for failing to highlight an erroneous jury instruction with respect to petitioner's alleged failure to file a tax return for the years 2006 and 2009. See Dkt. No. 1-2, p. 5.

2.  Appellate counsel was ineffective for failing to argue that there was insufficient evidence to find petitioner guilty of failing to file a tax return for the year 2009.  <u>See</u> Dkt. No. 1-2, pp. 5-7.[3]

3.  Appellate counsel was ineffective for failing to argue that the trial court imposed upon petitioner, not the prosecution, the burden of proof with respect to his 2009 failure to file taxes charge.  <u>See</u> Dkt. No. 1-2, pp. 7-8.

4.  Appellate counsel was ineffective for failing to argue that there was insufficient evidence to find petitioner guilty of perjury.  <u>See</u> Dkt. No. 1-2, pp. 8-9.

5.  Appellate counsel was ineffective for failing to argue that petitioner's waiver of counsel was not knowing, voluntary, and intelligent.  <u>See</u> Dkt. No. 1-2, pp. 11-20.

6.  Appellate counsel was ineffective for failing to argue that the prosecution failed to turn over exculpatory evidence to petitioner.  <u>See</u> Dkt. No. 1-2, pp. 20-25.

7.  Appellate counsel was ineffective for failing to argue that the jury was not impartial.  <u>See</u> Dkt. No. 1-2, pp. 25-27.

8.  Appellate counsel was ineffective for failing to raise that the "oral pronouncment [sic] was differnt [sic] than sentence order."  <u>See</u> Dkt. No. 1, p. 17; Dkt. No. 1-2, pp. 28-31.

9.  Appellate counsel was ineffective for failing to challenge the trial court's denial of petitioner's request for additional time to consult the trial record to file post-trial motions.  <u>See</u> Dkt. No. 1-2, pp. 31-34.

10. Appellate counsel was ineffective for failing to challenge the trial court's decision not "to let the defendant speak before the imposition of [his] sentence."  <u>See</u> Dkt. No. 1-2, p. 34.

11. Appellate counsel was ineffective for failing to argue that petitioner was denied an opportunity to present a full and fair defense at trial.  <u>See</u> Dkt. No. 1-2, pp. 34-37.

12. Appellate counsel was ineffective for failing to argue that petitioner was denied access to his jail's law library or other legal materials.  <u>See</u> Dkt. No. 1-2, pp. 36-37.

13. Appellate counsel was ineffective for failing to argue that the charges raised against petitioner were vindictive and evinced prosecutorial misconduct.  <u>See</u> Dkt. No. 1-2, pp. 37-42.

14. Appellate counsel was ineffective for failing to argue that the prosecution committed fraud on the court.  <u>See</u> Dkt. No. 1-2, pp. 42-44.

---

[3] Petitioner entitled this claim "Actual Innocence" but spends the majority of his brief discussing the sufficiency of the evidence presented at trial with regard to this claim.  <u>See</u> Dkt. No. 1-2.

Dkt. No. 1; Dkt No. 1-2.

These claims shall be addressed in turn.

*Claims 1, 2, 3*

Claims 1, 2, and 3, though split into separate sections of petitioner's brief, are difficult to distinguish from one another. At the core of each claim is the proposition that the prosecution failed to prove that petitioner was guilty of failing to file his taxes in 2006 and 2009. Petitioner raises this argument obliquely, arguing the existence of errors in jury instructions and that the evidence presented to the jury with respect to these issues was insufficient to support a guilty verdict. See Dkt. No. 1-2. Viewed through the lens of ineffective assistance of appellate counsel, it is clear that petitioner is not entitled to relief with respect to these claims.

In these claims, petitioner argues that jury instructions twelve and thirteen, the instructions relevant to petitioner's charges for failure to file taxes in 2006 and 2009, respectively, constituted incorrect statements of the law and that appellate counsel was ineffective for failing to raise that matter on appeal. He argues that he was "actually innocent" of the crimes because the prosecution failed to offer sufficient evidence to demonstrate he met the threshold for filing.[4] See Dkt. No. 1-2.

It is clear, though, as just noted, that petitioner in this case failed to timely object to those jury instructions or the sufficiency of the evidence presented:

> THE COURT: ... All right. Now, the next instruction that I have indicates in Virginia for the tax year 2006 a single person not married was exempt from taxation if he or she received or earned less than seven thousand dollars in income for the tax year. Every single or unmarried resident of Virginia that earned or received more than seven thousand dollars was required to file a Virginia tax return. All right. And, Mr. Herrington, have you seen this instruction?

---

[4] This Court thus construes this argument as one based on the sufficiency of the evidence presented in support of the conviction.

DEFENDANT: Yes, I have.

THE COURT: Do you object?

DEFENDANT: No.

THE COURT: I'm going to mark it as instruction number twelve. The next instruction I have is dealing with tax year 2009 and sets the income amount at eleven thousand, two hundred and fifty dollars. Have you seen that instruction?

DEFENDANT: Yes.

THE COURT: Do you object?

DEFENDANT: No.

Transc. Aug. 1, 2012, pp. 61-63.[5] See Va. Sup. Ct. 5A:18 ("No ruling of the trial court ... will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . .").

As respondent asserts in his renewed motion to dismiss, petitioner's appellate counsel could not be deemed ineffective for failing to raise claims that petitioner—who elected to represent himself—failed to preserve at trial. See Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (appellate counsel in death penalty case "was under no duty to go beyond the trial record because nothing beyond that record would have been cognizable on appeal").

---

[5] In his 2019 traverse, petitioner *again* mischaracterizes the record, arguing that he successfully preserved this issue by objecting to the specific instruction's introduction. See Dkt. No. 73, pp. 23-24. Petitioner highlights Judge Deneke's statement that petitioner had preserved an issue but neglects to highlight *his own counsel's* statement that the judge was incorrect and had mistakenly referred to a different jury instruction that petitioner had in fact objected to. See Transc. Dec. 17, 2012, p. 63 ("MS FAROOQ: Judge, the specific transcript section that Your Honor was quoting a minute ago I'm afraid actually refers to jury instruction number twenty-eight. I'm afraid the earlier instructions were not vetted that much.").

Additionally, this Court agrees with the trial court's determination that, to the extent these issues *were* preserved, any error was harmless. The basis of petitioner's argument for a contrary finding is that, had the jury instructions stated that the prosecution was required to prove that petitioner's *adjusted* gross income, not gross income, exceeded the statutory limits to require a tax filing, the jury would not have found him guilty. See Dkt. No. 1-2. But the evidence presented at trial—which consisted of petitioner's bank records, tax returns, lease agreements, land records, DMV paperwork, bankruptcy documents, and witness testimony—demonstrated that petitioner brought in over $350,000 in the year 2006 and in the year 2009 had several tenants each paying him hundreds of dollars in cash or money orders each month. See Transc. July 31, 2012. Even deducting sources of income like unemployment insurance and mortgage loans, the jury easily could have found petitioner to have earned more than the minimum required income such that his failure to file taxes became a criminal offense. Because the evidence just described satisfies the standard to challenge a conviction based on the sufficiency of the evidence presented, see Jackson v. Virginia 443 U.S. 307 (1979),[6] petitioner's appellate counsel's failure to present this claim on appeal effected no prejudice on petitioner.

This Court thus concludes that, even if petitioner *had* preserved the issues in Claims 1 through 3, appellate counsel would not have secured a different outcome for petitioner by raising

---

[6] Jackson held that a reviewing court must ask whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). Because the jury surely could have found petitioner guilty on the basis of the evidence presented, this standard is met.

them on appeal.  Having failed to demonstrate the existence of prejudice, Claims 1 through 3 are

denied.[7]

### *Claim 4*

In Claim 4, petitioner asserts that, because he was found not guilty of making a material

false statement on a request for indigency on September 30, 2008, his guilty verdict with respect

to a perjury charge for the same act is inconsistent and cannot stand.  See Dkt. No. 1-2, pp. 9-10.

To the extent this claim was preserved at trial, it is without merit.  Citing long-established

Supreme Court of the United States precedent, the Supreme Court of Virginia recently affirmed

that such ostensibly inconsistent verdicts are not grounds for reversal.

> Because the jury (i) may have erred in failing to convict the defendant of the
> predicate offense while finding him guilty of the compound offense, or (ii) may
> have made a mistake in finding the defendant guilty of the compound offense
> while finding him not guilty of the predicate offense, or (iii) may have "simply
> decided to be lenient with the defendant" by convicting him only of the
> compound offense,
>
>> [i]nconsistent verdicts ... present a situation where "error," in the sense
>> that the jury has not followed the court's instructions, most certainly has
>> occurred, but it is unclear whose ox has been gored.  Given this
>> uncertainty, and the fact that the Commonwealth is precluded from
>> challenging the acquittal, it is hardly satisfactory to allow the defendant to
>> receive a new trial on the conviction as a matter of course.

McQuinn v. Commonwealth, 839 S.E.2d 907, 910-11 (Va. 2020) (quoting United States

v. Powell, 469 U.S. 57, 65 (1984)).

---

[7] The Court also disagrees with the notion that the burden of proof somehow shifted from the
prosecution to petitioner as it appears petitioner seeks to argue in Claim 3.  The Commonwealth
presented evidence damaging to petitioner's defense, but petitioner has failed to argue how that
evidence was inadmissible, let alone how any burden shifted as a result of its admission.

On this basis, petitioner has failed to demonstrate any entitlement to relief based on the alleged inconsistencies between his jury verdicts. His appellate counsel's failure to raise this claim on appeal thus did not prejudice petitioner.

### Claim 5

For all of the reasons previously discussed in this opinion, this Court finds that petitioner has failed to demonstrate any prejudice with respect to Claim 5, the claim that his waiver of trial counsel was invalid. Finding that the record demonstrates the knowing, voluntary, and intelligent nature of the waiver, this Court holds that petitioner has failed to demonstrate that his direct appeal would have resolved differently had appellate counsel raised this claim.

### Claim 6

In Claim 6, petitioner presents a rambling and confusing set of arguments loosely tethered around alleged violations of Brady v. Maryland, 373 U.S. 83, 1963). See Dkt. No. 1-2, pp. 20-25. The central violation petitioner articulates with respect to this claim is the Commonwealth's alleged failure to produce criminal complaints—apparently written by individuals named Andrea Flood and Ryan Weber—about Matthew Goldberg, a prosecution witness. Id. Those complaints, petitioner states, led to criminal charges being raised against Goldberg, charges that allegedly stemmed from "Mr. Goldberg's attempts to set up [petitioner] by trying to have tenant Ryan Weber, plant child pornography and drugs in [petitioner's] home" and have tenants lie about it in court. Id. Petitioner additionally takes issue with the Commonwealth's failure to disclose that it paid for Goldberg's travel to and from Florida to testify at petitioner's trial.

The two items just discussed represent petitioner's clearest, but not only, allegations of Brady violations. Indeed, in this section of his petition, petitioner quickly and with little

31

explanation alleges a constellation of similar issues.  He appears to claim, for instance, that the Commonwealth improperly withheld information that Andrea Flood had been charged for drug possession as a result of a September 9, 2011 search warrant executed on petitioner's house.  Id. And although it is unclear, petitioner also appears to suggest he was improperly denied recordings of his prison phone calls with witnesses.  Id.

To prevail as to a Brady claim, a petitioner must establish (1) that the evidence at issue is favorable to him in that it is either exculpatory or impeaching; (2) that the evidence in question was suppressed by the state, either willfully or inadvertently; and (3) that prejudice ensued.  See Banks v. Dretke, 540 U.S. 668, 691 (2004).  To demonstrate prejudice resulting from the improper suppression of favorable evidence, petitioner must demonstrate that he did not receive a "fair trial ... resulting in a verdict worthy of confidence."  Kyles v. Whitley, 514 U.S. 419, 434 (1995).  Put another way, petitioner must show that the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  Id. at 435.

This Court concludes that petitioner has failed to adequately allege Brady violations with respect to any of the pieces of evidence he alleges were improperly suppressed and has therefore failed to show that his appellate counsel was ineffective for failing to raise this claim.

1.      *Criminal Complaints*

Although the criminal complaints petitioner describes would no doubt be favorable to his defense in the abstract, petitioner has failed to satisfactorily allege either (1) that those documents were truly suppressed or (2) that, if produced, they would have undermined confidence in his many guilty verdicts.

32

First, with respect to the issue of suppression, this Court finds that petitioner's allegations are insufficient. Indeed, petitioner's allegations fail to convince this Court that the criminal complaints petitioner requested were still in existence at the time he requested them. Petitioner identifies two bases for a contrary finding: first, that § 17.1-213 of the Virginia Code requires the preservation of such documents, and second, that prosecutor Tara Mooney "was involved in the decision to Nolle-Prosequi the charges" raised against Goldberg. Neither ground is availing.

Petitioner's first proposed basis for the existence of the documents is unconvincing because the statute he invokes, § 17.1-213, imposes document preservation requirements only on judicial clerks and clerks' offices, not law enforcement entities such as the Stafford County Sheriff, which petitioner claims possessed the records in question. Where, as here, there is no indication or allegation that the "statements" petitioner alleges exists were ever submitted to a state court, the cited statute would not have required the documents' preservation.

Petitioner's second proposed basis for the continued existence of the documents—that prosecutor Tara Mooney "was involved in the decision to Nolle-Prosequi [Mr. Goldberg's] charges"—is without any logical basis. As an initial matter, Ms. Mooney disputed on the court record any involvement in the dropping of charges against Matthew Goldberg. See Transc. July 13, 2012, pp. 70-72 (PROSECUTOR: "… He says there was a report filed and somebody was – a possible witness in this case for the Commonwealth was arrested. I believe that was nol-prossed by Mr. Peterson, who was here earlier. I wasn't personally involved in that case, but I believe it was nol-prossed. It never went forward to trial, it never went forward to a conviction."). Petitioner's bare assertion that Ms. Mooney was involved in Mr. Goldberg's case is thus unconvincing. Second, even if Mooney *had* been involved in the nolle prosequi decision,

her involvement in the court proceedings would have no bearing whatsoever on the sheriff's office's decision to retain or destroy certain records.

Even assuming the documents *were* preserved and improperly suppressed, petitioner still has failed to demonstrate that they would have tangibly aided his defense. This is so, first, because the individuals through whom petitioner would have needed to introduce these documents, Ryan Weber and Andrea Flood, did not testify at trial. Indeed, this Court has failed to locate in the transcripts any testimony proffered by Mr. Weber, and the transcripts reveal that Ms. Flood invoked her right against self-incrimination and did not testify in the proceedings. Thus, even to the extent the documents—which likely would have constituted hearsay—would hypothetically have been deemed admissible under the Virginia Rules of Evidence, petitioner has failed to demonstrate the manner in which he would have introduced them in the first place. This represents a significant problem for petitioner in establishing that these documents would undermine confidence in his convictions. Cf. Walker v. Kelly, 589 F.3d 127, 142 (4th Cir. 2009) (finding fact that suppressed documents were not "independently admissible" to be a "glaring preliminary problem" for petitioner in establishing prejudice).

2.   *Evidence of Travel Arrangements for Matthew Goldberg*

The state habeas court addressed and denied on the merits petitioner's argument regarding the alleged suppression of Mr. Goldberg's travel arrangements. See Record No. 150943. Accordingly, with respect to this issue, the Court is bound by the deferential requirements of 28 U.S.C. § 2254(d). Because the Court finds that the state court's determination as to this issue was not contrary to or an unreasonable application of federal law, this argument is denied.

3.  *Criminal Charges Raised Against Andrea Flood*

Petitioner next suggests that he was the victim of a <u>Brady</u> violation when prosecutor Tara Mooney failed to inform him that Andrea Flood had been charged with crimes based on evidence found in the September 9, 2011 search of petitioner's home. Dkt. No. 1-2. Petitioner argues that he met Mooney on July 25 for a discovery conference and that she failed to inform him—and thus "concealed" information—about the charges. <u>Id.</u>

Petitioner fails to assert the manner in which his knowledge of Ms. Flood's criminal charges were material or beneficial in the case raised against him. He has also failed to demonstrate the manner in which this information was "suppressed." Indeed, contrary to petitioner's statements, a review of the Virginia state court system's website reveals that Flood was not arrested until July 31, 2012, the day on which petitioner concedes he learned of the charges.[8]

Consequently, this Court finds that petitioner has failed to allege the existence of a <u>Brady</u> violation with respect to Andrea Flood's criminal charges.

4.  *Phone Call Recordings*

Petitioner next suggests he was improperly denied access to recordings of phone calls he had conducted with prosecution witnesses. <u>See</u> Dkt. No. 1-2. Because it is clear that petitioner was provided a CD containing those recordings and, indeed, played one of the recordings at trial, <u>see</u> Transc. July 31, 2012, pp. 392-99, this Court finds that the Commonwealth did not suppress this evidence and that, accordingly, no <u>Brady</u> violation occurred.

**** 

---

[8] <u>See</u> CIRCUIT COURT CASE INFORMATION, http://ewsocis1.courts.state.va.us/CJISWeb/circuit.jsp (select "Stafford Circuit Court," click "Begin," enter "Flood, Andrea" into "Name" field," click "Search by Name") (last visited September 10, 2020).

In summary, the Court fails to find the existence of any <u>Brady</u> violations with respect to the several pieces of evidence petitioner alleges he was improperly denied. Petitioner's allegations fail to establish that the evidence was material, that it was suppressed, or that it would have impacted his trial. Finding no <u>Brady</u> violation, this Court finds that petitioner's appellate counsel was not ineffective for failing to raise a <u>Brady</u> claim on appeal. Claim 6 is accordingly dismissed.[9]

### *Claim 7*

Claim 7 asserts that appellate counsel was ineffective for failing to argue that petitioner had been denied an impartial jury. <u>See</u> Dkt. No. 1-2, pp. 25-28. This claim is predicated on the fact that, after voir dire had concluded, a prosecution witness noted that she had encountered a juror at her place of work in the past. <u>See</u> Dkt. No. 1-2, pp. 25-28.

This claim is easily dismissed because petitioner failed to abide by Rule 5A:18 of the Rules of the Supreme Court of Virginia in that he did not contemporaneously object—or even inquire—as to the extent of the juror's relationship with the witness at the time he learned of it. The issue was thus not preserved on appeal. The exchange occurred as follows:

THE COURT: … What is your other issue, Ms. Mooney?

---

[9] Petitioner's repeated assertions that he is entitled to an evidentiary hearing as to this ground are incorrect. True, in the context of alleged <u>Brady</u> vioations the Fourth Circuit in <u>Juniper v. Zook</u>, 876 F.3d 551 (4th Cir. 2017), held that a district court should hold an evidentiary hearing where "such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Juniper</u>, 876 F.3d at 571 (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007)). It follows, then, that, where, as here, the Court finds that petitioner's allegations *do not* make out a valid <u>Brady</u> claim, no such hearing is required. Additionally, this Court has not been tasked with evaluating the merits of petitioner's <u>Brady</u> claim outright—the Fourth Circuit has already denied a certificate of appealability with respect to that claim. <u>See</u> Appeal No. 17-6252. Instead, this Court has been asked to evaluate the <u>Brady</u> question solely through the lens of ineffective assistance of counsel. <u>Juniper</u>, then, is inapposite with respect to its guidance on the provision of evidentiary hearings.

PROSECUTOR: Mia Canino approached me and told me after the jury was already impaneled that she recognized a juror, number five, and number five also she believes recognized her because they kind of glanced at each other and did acknowledgement with their eyes and head and nonverbal body cues. She said she recognizes number five as a person that she knows from her dog grooming and that number five brings her dog to be groomed by Ms. Canino and Ms. Canino has done it on more than one occasion. So they know each other in that capacity, but they never discussed the case together . . . .

THE COURT: All right. Mr. Herrington, anything you want to say about that?

DEFENDANT: No, Your Honor.

Transc. July 30, 2012, pp. 240-41.

Contrary to petitioner's argument, post-trial counsel's motion related to this issue did not preserve this question for appeal. See Riner v. Commonwealth, 268 Va. 296, 318 (2004) (when a defendant learns of alleged juror misconduct during trial but fails to move for mistrial at time of discovery, the defendant waives appellate review of the juror's misconduct); Wyatt v. Commonwealth, 2015 WL 146013, at *3 (Ct. App. Va. Jan. 13, 2015) (holding that appellant failed to abide by Rule 5A:18 to preserve juror bias question by first raising the issue in a post-trial motion). Because it is clear that this issue was not preserved, appellate counsel's failure to raise it is not evidence of deficient performance. See Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989).

### Claim 8

In Claim 8, petitioner asserts that appellate counsel was ineffective for failing to raise on appeal that the trial judge's oral pronouncement of petitioner's sentence differed from the sentence as written in the sentencing order. See Dkt. No. 1-2, pp. 28-31. Petitioner argues that he was entitled to rely on the oral pronouncement, which he believed imposed a more lenient sentence than that contained in the written order. Id. This claim is easily dismissed because "[i]t is the firmly established law of th[e] Commonwealth [of Virginia] that a trial court speaks only

through its written orders." See Davis v. Mullins, 251 Va. 141, 148 (1996) (applying principle in capital murder case in which trial court's statement from bench conflicted with sentencing order). Because the Commonwealth's law is so clearly settled on this issue in a manner adverse to petitioner, appellate counsel's performance was not deficient for failing to raise this claim. Indeed, in this light, to have raised such an argument in a Virginia state court would have been legally frivolous, and appellate counsel cannot be faulted for declining to raise a legally frivolous claim. See Laguerre v. United States, No. 7:07cv272, 2007 WL 3551948, at *4 (W.D. Va. Nov. 15, 2007) (counsel not deficient for failing to raise legally frivolous argument).[10]

### Claim 9

Claim 9 also lacks merit. In the claim, petitioner argues that appellate counsel erred when he failed to argue that the trial court "refused to give counsel enough time to investigate, and file, or be heard on post-trial motion[s]." Dkt. No. 1-2, p. 31. At petitioner's request, the Court appointed an attorney, Ms. Shama Farooq, for post-trial motions and petitioner's direct appeal. Herrington alleges that, on November 5, 2012, the trial court denied, over objection, counsel's request for more time to review the record before filing post-trial motions. He states, "The Court [gave] till [sic] (Dec. 10, 2012) to file a motion . . . . Mrs. Farooq let the Court know she was not sure if that was enough time." Dkt. No. 1-2, p. 32. Petitioner's argument blatantly mischaracterizes the record.

The record reveals that the following is what truly occurred. Attorney Farooq appeared in court on November 5, 2012, and expressed concerns about the size of the trial record and her ability to file post-trial motions by the then-relevant deadline, which had been set for November

---

[10] The Court also notes that there does not appear to be any discrepancy between the oral pronouncement and the written sentencing order, rendering this claim factually as well as legally frivolous. Compare Transc. Oct. 1, 2012, pp. 189-193 with Dkt. No. 1-3, pp. 17-19.

13, 2012. See Transc. Nov. 5, 2012, pp. 2-3. Accordingly, counsel requested "at least ... twenty days to review the entire record to file the motions." Id. at p. 6. Judge Deneke then set a motion-filing deadline of December 10, 2012, and a hearing one week later. Id. at pp. 8-9. When asked by Judge Deneke whether she would be able to meet that deadline, Attorney Farooq stated, "I should be able to, Your Honor." Id. at p. 9.

Petitioner also makes much of the fact that his eleventh-hour pro se post-trial motions were not heard and that he was not provided additional time to discuss those motions with Attorney Farooq. See Dkt. No. 1-2, pp. 32-33. Petitioner may have honestly believed he was denied adequate time to discuss his claims with counsel, but the record makes clear that counsel did not share petitioner's reservations. Indeed, counsel stated that she "contest[ed] Mr. Herrington's version of how often [they] had communication about these issues." Transc. Dec. 17, 2012, p. 76. Counsel also made clear that she had reviewed the record, filed two motions she thought were meritorious, and declined to adopt several of the pro se motions petitioner had filed.

> MS. FAROOQ: ... The two motions that I filed I felt were meritorious after reviewing the entire record and discussing some issues internally in the office. Now, I did not adopt the earlier motion that Mr. Herrington filed because I reviewed the record and conducted an investigation with the Commonwealth Attorney's Office and decided that it would not be meritorious unless something else came forward, Your Honor, and nothing else came forward in the last few weeks. The motions that Mr. Herrington filed last week, I was not informed that he was planning on doing that, and neither myself nor the Commonwealth's Attorney received a copy . . . .
>
> THE COURT: I understand.
>
> MS. FAROOQ: I think it was actually more than five or six motions, Your Honor. There is one of them that was stapled, and it's actually three motions within it, Your Honor. And I will tell the Court that some of these I discussed with Mr. Herrington in detail, and he understands my opinion on them, he disagrees but he understands my opinion . . . .

Transc. Dec. 17, 2012, pp. 5-7.

Additionally, as Judge Deneke made clear, the motions over which petitioner sought review, motions counsel did not deem meritorious, had previously been raised by petitioner and denied at various points in the proceedings. See Transc. Dec. 17, 2012, pp. 84-86.

Based on the above, to find fault in appellate counsel's failure to raise this claim on appeal would be to find fault in counsel's refusal to be dishonest with the Court of Appeals of Virginia. This is an untenable outcome. See HUD v. Cost Control Mktg. & Sales Mgmt., 64 F.3d 920, 925 (4th Cir. 1995) (admonishing "that a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy.").

And to the extent he argues Attorney Farooq was herself ineffective, petitioner's claim is equally without merit. As the record amply demonstrates, counsel filed two motions she thought meritorious and neglected to adopt petitioner's pro se motions which she deemed without basis or that had already been denied by the Court. This is not evidence of ineffective performance. Indeed, counsel "need not raise every possible claim to meet the constitutional standard of effectiveness." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014). Attorney Farooq was not ineffective "merely because [she] overlook[ed] one strategy while vigilantly pursuing another." Williams v. Kelly, 816 F.2d 939, 950 (4th Cir. 1987). Accordingly, Claim 9 is denied.

### *Claim 10*

There is no factual basis for petitioner's tenth claim, a claim that he was denied an opportunity to speak before being sentenced. Indeed, the transcript of the relevant hearing shows that petitioner engaged in a lengthy statement before he was sentenced. See Transc. Oct. 1, 2012, pp. 178-84. Accordingly, for appellate counsel to have raised such a claim in front of the Court of Appeals of Virginia would have been to lie to the state appellate court. Counsel's failure to so deceive the state court does not constitute deficient performance. See HUD v. Cost

40

Control Mktg. & Sales Mgmt., 64 F.3d 920, 925 (4th Cir. 1995) (admonishing "that a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy.").

<em>Claim 11</em>

In Claim 11, petitioner asserts that appellate counsel was ineffective for failing to argue that petitioner was denied an opportunity to present a full and fair defense at trial. See Dkt. No. 1-2, pp. 34-36. This claim surrounds the trial court's alleged denial of petitioner's request to recall defense witness Julie Tremblay, for whom petitioner had already conducted his direct examination. Id. Petitioner suggests that the court's denial impeded his ability to introduce "evidence that was contrary to testimony" introduced by Ms. Tremblay and central to his defense. Dkt. No. 1-2, p. 35.

In this claim, it is clear that petitioner attempts to repackage his misunderstanding of the rules of evidence to suggest that he was denied an opportunity to present a full defense. Indeed, after the prosecutor had cross-examined Ms. Tremblay, petitioner stated that he, too, intended to cross-examine the witness. The judge informed petitioner that the scope of any additional questioning would necessarily be limited to the topics covered in the prosecution's cross-examination. See Transc. July 31, 2012, pp. 466-68. At that point, petitioner expressly stated that he had no questions for Ms. Tremblay on redirect, and the witness was excused. See Transc. July 31, 2012, pp. 467-69 (THE COURT: "You have no redirect for this witness?" DEFENDANT: "No.").

The veracity of petitioner's account is additionally diminished by the fact that, after concluding Ms. Tremblay's examination, petitioner stated that the *only* witness he intended to call the following day was Chief of Aquia Harbour Police Patricia Harman. See id. at pp. 474-75

41

(THE COURT: "... Mr. Herrington, tell me who if anyone you intend to call as a witness tomorrow." DEFENDANT: "Just the chief." ... THE COURT: All right. Mr. Herrington, anyone else you intend to call tomorrow?" DEFENDANT: "No, Your Honor."). Accordingly, the transcript belies petitioner's characterization that he was denied an opportunity to introduce specific evidence.

Finding that there is no factual basis for petitioner's argument that he was denied an opportunity to present a full and fair defense, this Court also finds that appellate counsel's performance was not deficient for failing to raise this claim on appeal. Cf. Davis v. Polk, No. 1:05cv29, 2007 WL 2898711 (W.D.N.C. Sept. 28, 2007) (finding appellate counsel was not ineffective for failing to raise claim which possessed "no factual basis").

### Claim 12

In Claim 12, petitioner argues that appellate counsel was ineffective for failing to raise the fact that petitioner lacked access to a prison law library to prepare for his trial. See Dkt. No. 1-2, pp. 36-37. But petitioner has failed to establish that, having waived his right to counsel, he was entitled to access his institution's library in the first place. This Court cannot identify any abstract, federally-guaranteed right of a pretrial detainee to access his institution's law library. See United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir. 1978) ("We do not read Bounds to support th[e] conclusion" that a defendant who has waived his right to counsel "had a right to access to legal matters to prepare his defense and the government had an obligation to provide such access."); see also Edwards v. United States, 795 F.2d 958, 961 n.1, 3 (11th Cir. 1986) (rejecting habeas petitioner's claim that he was denied access to law library during criminal trial where he had elected to proceed pro se, concluding, "When counsel is offered, the alternative of a library is not mandatory"); Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) (affirming

dismissal of § 1983 suit by prisoner after concluding that the prisoner "had no constitutional right to access a law library in preparing the pro se defense of his criminal trial"); United States ex rel. George v. Lane, 718 F.2d 226, 233 (7th Cir. 1983) ("We hold that Illinois satisfied its obligation under the sixth [and fourteenth] amendment[s] when it offered the defendant the assistance of counsel which he declined.") (internal quotations omitted) (quoting Chatman, 584 F.2d at 1360). Petitioner has thus failed to demonstrate that his conviction is contrary to the Constitution or other federal law. See 28 U.S.C. § 2254(1) ("[A] district court shall entertain an application for a writ of habeas corpus ... only on the ground that [the petitioner] is in custody in violation of the *Constitution or laws or treaties of the United States*.") (emphasis added).

Petitioner has equally failed to identify such a right established by the Commonwealth of Virginia. Previous holdings of this Court suggest that there exists no such right. See Makdessi v. Watson, 682 F. Supp. 2d 633, 656-57 (E.D. Va. Feb. 4, 2010) (upholding state court holding—which invoked Chatman—that criminal defendant who had waived right to counsel "had no constitutional right to any access to a law library"). Because petitioner possessed neither a federal nor a state right to access a law library, he has failed to show that his appellate counsel's performance was deficient for his failure to raise such a claim. He has equally failed to demonstrate prejudice.

### *Claim 13*

In Claim 13, petitioner raises a litany of allegations against prosecutor Tara Mooney in hopes of showing that she acted vindictively in her decision to prosecute him. See Dkt. No. 1-2, pp. 37-42. Viewed through the lens of ineffective assistance of appellate counsel, he asks this Court to find that counsel's performance was deficient for failing to raise on appeal an argument that petitioner's prosecution was vindictive in nature.

Petitioner faces a high bar. "It is well established that the choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney." Kauffmann v. Commonwealth, 8 Va. App. 400, 410 (1989). "Indeed, 'the institution of criminal charges, as well as their order and timing, are matters of prosecutorial discretion.'" Barrett (Clark) v. Commonwealth, 41 Va. App. 377, 391 (2003) (quoting Bradshaw v. Commonwealth, 228 Va. 484, 492 (1984)). Nevertheless, "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978).

To establish prosecutorial vindictiveness, a criminal defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward him and (2) that the defendant would not have been prosecuted but for that animus. See United States v. Goodwin, 457 U.S. 368, 380 n.12 (1982).

In this case, petitioner alleges that Attorney Mooney previously prosecuted him and failed to secure guilty verdicts at trial. Id. He further alleges that Mooney was responsible for the fact that petitioner was stripped of his real estate license in the buildup to his criminal case. Id. But petitioner offers little beyond unsupported allegations and almost nothing by way of objective evidence in support of his claim. What he does offer appears limited to a transcript of a previous trial in which Attorney Mooney stated that she had contacted petitioner's doctor with regard to the drug charges petitioner faced [Dkt. No. 1-3, pp. 36-38] and messages from Stafford County Department of Works officials on which Mooney was "cc'd" [Dkt. No. 1-3, p. 30].

Because petitioner provided to his appellate counsel only a borderline indecipherable, handwritten list of over 130 assignments of error that did not include even these slender reeds of

44

evidence, appellate counsel cannot be deemed ineffective for failing to raise this issue on appeal.
Cf. Davis v. Polk, No. 1:05cv29, 2007 WL 2898711 (W.D.N.C. Sept. 28, 2007).

*Claim 14*

Finally, in Ground 14, petitioner argues that appellate counsel was ineffective for failing
to argue that petitioner's conviction arose out of "fraud on the court." See Dkt. No. 1-2, pp. 42-
44. Fraud on the court is "not your garden-variety fraud." Fox v. Elk Run Coal Co., 739 F.3d
131, 135 (4th Cir. 2014). It is instead limited to "the most egregious cases," such as "bribery of
a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity
of the court and its ability to function impartially is directly impinged." Great Coastal Express,
Inc. v. Int'l Bhd. of Teamsters, 675 F.2d 1349, 1356 (4th Cir. 1982). Fraud on the court requires
"an intentional plot to deceive the judiciary," and must "touch on the public interest in a way that
fraud between individual parties generally does not." Fox, 739 F.3d at 136.

In support of this claim, petitioner claims that Attorney Mooney misled the trial court by
stating an incorrect date with regard to the time petitioner requested certain documents be
produced. See Dkt. No. 1-2, p. 43. He also states, "It is proven Mrs. Mooney lied to the Court
about whether written complaints about Matthew Goldberg existed when they were asked for;"
"It is proven Ben Hardin made false spreadsheets;" "It is also proven Mr. Hardin gave false
testimony;" "Mr. Edwards from Building & Zoning gave false testimony;" "It has been proven
that Mrs. Lewis (tax investigator) that her [sic] spreadsheets were false;" "It has been proven that
Mr. DuBeau gave false testimony;" and "It was proven Mrs. Canio gave false testimony." See
Dkt. No. 1-2, pp. 43-44.

Petitioner first asserts that Attorney Mooney represented to the trial court on July 30,
2012 that petitioner had requested documents a week prior, "knowing full well that this request

45

was made in Court on 7/13/12, more than double the amount of time Mrs. Mooney claimed she had." Dkt. No. 1-2, p. 43. Petitioner has yet again misconstrued the record with respect to this assertion.

> PROSECUTOR: ... I tried to talk to the officer to find out if they [the records] did exist, can we get them, and all he'll say is I'll look, I'll see, and I never heard back from him about – and I made another inquiry of him over e-mail, do you have those, can you please let me know if you have those, and I never heard anything back. So Mr. Herrington, also, Mr. Herrington made this specific request I would say week, two weeks, less than three weeks, it was definitely during the month of July that he wanted these, and so my conversation or my attempt to get this from the officer has been very recent because it only came to me recently."

Transc. July 30, 2012, p. 12.

Accordingly, it is clear that some of petitioner's claims of fraud perpetrated against the trial court are *themselves* dishonest. And, even if petitioner's above assertions *had* been proven true, the misconduct alleged does not rise to the level of fraud on the court. Indeed, petitioner's arguments that a host of witnesses provided untruthful or inaccurate testimony does not establish such a claim. See Superior Seafoods, Inc. v. Tyson Foods, Inc., 620 F.3d 873, 878 (8th Cir. 2010) (fraud on the court is "fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury"). In this light, as has been true of many of petitioner's asserted grounds for relief, this Court holds that this claim lacks any significant factual basis. Appellate counsel's performance was not deficient for failing to raise this claim on appeal. Davis v. Polk, No. 1:05cv29, 2007 WL 2898711 (W.D.N.C. Sept. 28, 2007) (finding appellate counsel was not ineffective for failing to raise claim which possessed "no factual basis").

**** 

As noted above, at the conclusion of his trial, petitioner was appointed an attorney, Ms. Shama Farooq. Farooq, a member of the Office of the Public Defender, stated in court that she

had discussed petitioner's case with colleagues in her office and raised two post-trial motions that she concluded were potentially meritorious. Each motion was denied. In this light, it is unsurprising that Alexander Raymond, the attorney set to handle petitioner's appeal, later reviewed the trial record and found no meritorious issues for appeal.

Raymond's conclusions were not for lack of effort on petitioner's part; petitioner furnished his appellate attorney with over 130 potential errors. Petitioner later consolidated those alleged errors into fourteen major claims, the fourteen claims analyzed above. Finding—as Attorney Alexander Raymond found—these claims baseless, the Court concludes that Raymond was not ineffective in failing to raise those arguments on appeal. This claim is denied.

## IV. Conclusion

For the reasons stated above, respondent's motion to dismiss must be granted, and the petition must be dismissed with prejudice. An appropriate Order will issue.

Entered this 29 day of Sept. 2020.

Alexandria, Virginia

/s/

Anthony J. Trenga
United States District Judge

47